UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

IN THE MATTER OF THE COMPLAINT

-OF-

HENRY MARINE SERVICE, INC., as Owner of the
tug DOROTHY J, a 1982, 65 foot vessel, for
Exoneration from or Limitation of Liability,

                         Petitioner.

--------------------------------------------------------X

FILED
CLERK

9/29/2015 9:14 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

DECISION AND ORDER
14-cv-6824 (ADS)(ARL)

**APPEARANCES:**

**Rubin, Fiorella, & Friedman LLP**
*Attorneys for the Petitioner Henry Marine Service, Inc.*
630 Third Street, 3rd Floor
New York, NY 10017
        By: James Mercante, Esq.,
             Richard Gonzalez, Esq., Of Counsel

**Hopkins & Kopilow, Esqs.**
*Attorneys for the Claimant and Counter-Defendant Nassau County Bridge Authority*
100 Quentin Roosevelt Blvd, Suite 506
Garden City, NY 11530
        By: Stanley Kopilow, Esq., Of Counsel

**Betancourt VanHemmen Greco & Kenyon LLC**
*Attorneys for the Claimant and Counter-Claimant Sterling Equipment, Inc.*
46 Trinity Place
New York, NY 10006
        By: Ronald Betancourt, Esq.,
             Alton James Evans, Jr., Esq., Of Counsel

**SPATT, District Judge.**

        This case is related to 14-cv-5197 (the "Damages Action"). That case is a damages

action originally brought in Nassau County Supreme Court by the Plaintiff Nassau County

Bridge Authority (the "NCBA") against the Defendants Henry Marine Service, Inc. ("Henry

Marine"), Sterling Equipment, Inc. ("Sterling"), and James Olsen ("Olsen") (collectively, the "Defendants").

In the Damages Action, the Plaintiff brought one claim against the Defendants based on negligence and seeks to recover damages caused to the Atlantic Beach Bridge (the "Bridge") in Nassau County on December 9, 2012, after the Kelly, a 260-foot barge being towed by the Dorothy J, a towing vessel, collided with the northwest fender system of the Bridge.

On November 20, 2014, Henry Marine, the owner of the tug Dorothy J, commenced this action pursuant to 46 U.S.C. § 30501, *et seq.*, to limit its liability for claims arising out of the December 9, 2012 accident to $530,000, the value of Henry Marine's interest in the Dorothy J.

Presently before the Court is a motion by NCBA pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b) to dismiss this action.

For the reasons set forth below, the motion by NCBA is denied without prejudice and with leave to renew to the extent that an appropriate stipulation is filed.

## I. BACKGROUND

### A. Limitation of Liability Actions

Prior to setting forth the relevant facts, the Court finds it necessary to provide a brief overview of limitation of liability actions.

The Limitation Act, 46 U.S.C.A. § 30505 (the "Limitation Act"), allows "a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 446, 121 S. Ct. 993, 1000, 148 L. Ed. 2d 931 (2001).

"Congress passed the Limitation Act in 1851 'to encourage ship-building and to induce capitalists to invest money in this branch of industry.'" Id. (citing Norwich & N.Y. Transp. Co. v. Wright, 13 Wall. 104, 121, 20 L. Ed. 585 (1871)).

The procedure for a limitation action is found in Supplemental Admiralty and Maritime Claims Rule F ("Rule F"). Rule F requires that the vessel owner file a complaint seeking exoneration or limitation of liability "[n]ot later than six months after receipt of a claim in writing." After filing the complaint, Rule F sets forth the following procedures:

> The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

Lewis, 531 U.S. at 448.

## B. The Damages Action

On August 6, 2014, NCBA filed a complaint against Henry Marine, Olsen, D&J River Towing, Inc. ("D&J"), and Sterling in Nassau County Supreme Court.

According to the complaint, on December 8, 2012, the Dorothy J, a tug boat owned by Henry Marine and D&J, was towing the Kelly, a barge owned by Sterling. Olsen was the captain of the Dorothy J on the evening of December 8, 2012.

On December 8, 2012, at 11:41pm, the Dorothy J allegedly "on signal . . . requested the opening of the Bridge."

NCBA alleges that in response, it requested that the Dorothy J "slow transit to the Bridge to allow the opening of the Bridge."

Allegedly, the Dorothy J failed to do so, and on December 9, 2012, at approximately 12:16 a.m., the Kelly collided with the "northwest fender system of the Bridge."

On July 18, 2013, more than six months after the accident, Vincent LaRocco

("LaRocco"), a maintenance supervisor for the NCBA, sent Dorothy E. Julian ("Julian"),

President and CEO of Henry Marine, an email which stated the following:

> I have been directed at this time to contact your firm in regard to [the] incident of
> the tug Dorothy J. and our North/West fender wring.  We are enquiring as to how
> you would like to proceed with repairs.  Please contact us on whether you would
> like to have your own company do the repair work, or have us do the repairs and
> bill your insurance.

(Hopkins Decl., Ex. A.)

On March 18, 2014, nine months later, James Mercante, Esq. ("Mercante"), counsel for

Henry Marine, sent a letter to Stanley R. Kopilow, Esq. ("Kopilow"), counsel for NCBA, stating:

> We are counsel for owners of the tugboat 'Dorothy J.'  We received your
> correspondence of July 18, 2013 (and refer to our subsequent telephone
> conversations), wherein Nassau County is considering pursuing a claim for
> repairs to the Atlantic Bridge arising out of a December 9, 2012 allision involving
> the Dorothy J.  For the reasons stated below, and as determined by the Coast
> Guard's official investigation[,] the owner of the Dorothy J are not liable for the
> damage to the bridge.

(Hopkins Decl., Ex. B, at 1.)  The letter goes on to describe the investigation of the U.S. Coast

Guard (the "Coast Guard") of the December 9, 2012 accident.  (Id. at 1.)   According to

Mercante, the Coast Guard ultimately concluded that there was "no fault on the Tug Dorothy J or

its operator."  (Id. at 1.)  Finally the letter concluded, "In light of the foregoing [Coast Guard

Report], we trust that there is no need for further discussion related to the allision on December

9, 2012, and that the matter is ended."  (Id. at 3.)

Although the March 18, 2014 letter referred to previous phone conversations between

NCBA and Henry Marine, it is not clear from the letter, nor from the record, what the parties

discussed during those conversations.

As noted above, on August 6, 2014, NCBA filed a negligence claim against Henry Marine, Olsen, D&J, and Sterling in Nassau County Supreme Court seeking $850,000 in damages.

On September 14, 2014, pursuant to 28 U.S.C. § 1441, Henry Marine and Olsen filed a timely notice of removal on the basis of "admiralty jurisdiction." The case was assigned to this Court under docket number, 14-cv-5197.

On November 13, 2014, NCBA filed a motion to remand this case to Nassau County Supreme Court, alleging that the "saving to suitors" clause of 28 U.S.C. § 1333 protected its right to pursue its negligence claim in state court.

On February 14, 2015, the Court so-ordered a stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) filed by NCBA and D&J voluntarily dismissing D&J from the action

On September 19, 2015, the Court granted the motion by NCBA and remanded the Damages Action to Nassau County Supreme Court because it found (i) the "saving to suitors" clause precluded removal of *in personam* admiralty claims without an independent basis of federal jurisdiction; and (ii) there was no independent basis of subject matter jurisdiction.

## C. The Present Action

On November 20, 2014, Henry Marine commenced this action under the Limitation Act seeking exoneration from or limitation of liability to $530,000, the alleged post-casualty value of its ownership interest in the Dorothy J, in any claims arising from the December 9, 2012 incident (the "Henry Marine Limitation Action"). Henry Marine also offered a "surety, equal to the amount or value of [its] interest in the Dorothy J" in compliance with the requirement set forth in Supplemental Rule F requiring that the owner of the vessel place a "deposit with the court, a sum equal to the amount of value of the owner's interest in the vessel and pending freight."

On December 3, 2014, United State District Judge Leonard D. Wexler entered an order "restraining all suits . . . to recover damages . . . until the hearing and determination of this action" (the "Restraining Order").

On December 3, 2014, the same day, the Clerk of the Court issued a notice to the parties in the Damages Action of the pending Limitation Action and directed the parties to file an answer in the Henry Marine Limitation Action on or before January 30, 2015.

On December 22, 2014, attorney Kopilow filed a letter with this Court requesting a conference to discuss reassigning the Limitation Action from Judge Wexler to this Court and vacating the Restraining Order so that this Court could decide the remand motion in the Damages Action.

On January 6, 2015, the Henry Marine Limitation Action was reassigned to this Court.

On January 15, 2015, the parties appeared for a conference where the Court set a briefing schedule on NCBA's motion to dismiss the Limitation Action as untimely.

On January 29, 2015, NCBA filed the present motion seeking to dismiss this action as untimely and in the alternative, to vacate the Restraining Order so that it could pursue its claim in state court.

Also on January 29, 2015, Sterling filed an answer to the Limitation Action complaint, denying NCBA's allegations in the Damages Action that it acted negligently and raising various affirmative defenses. It also asserted two counterclaims against Henry Marine based on: (i) indemnity and contribution for "the amount of any judgment that may be recovered against Sterling by parties, including any judgment that may be recovered by the NCBA, together with costs, disbursements and attorneys' fees incurred by Sterling in its defense"; and (ii) "breach of the towage agreement's implied warranty of workmanlike performance."

On January 30, 2015, NCBA filed an answer in the Limitation Action, "without prejudice to its pending motion to dismiss for failure to timely commence this action[.]"

## D. The Sterling Limitation Action

On February 11, 2015, Sterling commenced a separate action under docket number, 15-cv-711, pursuant to the Limitation Act seeking exoneration from liability or limitation of liability to $750,000, the post-collision value of the Kelly (the "Sterling Limitation Action").

On March 18, 2015, the Court issued an order directing that all persons claiming damages resulting from the December 9, 2012 incident to appear and file claims against the Kelly on or before April 20, 2015.

On the same day, the Court also issued an order enjoining the further prosecution of any and all pending suits against Sterling arising from the December 9, 2012 incident until the hearing and determination of the Sterling Limitation Action.

Neither Henry Marine, nor NCBA or any other claimant, has appeared in the Sterling Limitation Action.

On April 23, 2015, the Clerk of the Court entered a certificate of default against Henry Marine and NCBA.

On April 23, 2015, Sterling filed a motion for default judgment, which is currently pending before this Court.

## II. DISCUSSION

As noted, presently before the Court is a motion by NCBA to dismiss the Henry Marine Limitation Action as untimely. In the alternative, NCBA seeks an order lifting the Restraining Orders.

For the reasons set forth below, the Court denies the motion to dismiss this action as untimely and grants NCBA leave to renew its motion to lift the Restraining Order pending the filing of an appropriate stipulation.

## A. Legal Standards

As noted, NCBA seeks to dismiss the Henry Marine Limitation Action as untimely and moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  In their papers, both Henry Marine and NCBA rely on documents that are not referenced in or integral to the complaint, such as declarations and letters filed by the parties' respective counsel prior to the commencement of the Damages Action.

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "only the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference."  Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS) (ARL), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)); see also Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (same).  Thus, if NCBA's motion was a Rule 12(b)(6) motion, then the documents relied on by NCBA and Henry Marine would not be properly before this Court.

However, NCBA's sole basis for the dismissal is its assertion that the Henry Marine Limitation Action is not timely.  Courts in this Circuit and in other Circuits have found timeliness challenges to limitation actions under the Limitation Act to be jurisdictional and have construed those challenges as motions under Rule 12(b)(1), not Rule 12(b)(6).  See N. E. Marine, Inc. v. Boody, No. 09-CV-5600 CBA, 2012 WL 4482794, at *7 (E.D.N.Y. July 5, 2012), report and recommendation adopted, No. 09-CV-5600 CBA RLM, 2012 WL 4482772 (E.D.N.Y. Sept. 27, 2012) ("Where a shipowner fails to file the limitation petition until after the expiration of the

six-month period, courts have dismissed the petition for lack of jurisdiction."); In re Eckstein Marine Serv., LLC, No. CIV.A. H-10-0156, 2010 WL 3303640, at *1 (S.D. Tex. Aug. 19, 2010) ("The Fifth Circuit has held that a claimant's challenge to the timeliness of the filing of a petition for limitation of liability is a challenge to the district court's jurisdiction to hear the petition for limitation of liability.").

In "resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002). Accordingly, courts have resolved factual disputes and considered matters outside of the complaint in determining whether an action under the Limitation Act is timely. See In re Eckstein Marine Serv., LLC, No. CIV.A. H-10-0156, 2010 WL 3303640, at *2 (S.D. Tex. Aug. 19, 2010) ("Because Jackson's motion raises what the Fifth Circuit treats as a jurisdictional issue and does not seek to address the underlying merits of the claim, the motion is a factual, and not a facial, attack . . . . This court may consider the materials the parties have submitted in evaluating the timeliness of Marquette's filing."); In re Miller's Launch, Inc., No. 10 CIV. 0872 BMC, 2010 WL 3282627, at *3 (E.D.N.Y. Aug. 18, 2010) (considering documents outside of the pleadings in deciding whether a limitation of liability act was timely); In re Pinand, 638 F. Supp. 2d 357, 359 (S.D.N.Y. 2009) ("While the Second Circuit has not addressed the issue, there is substantial authority for Norcia's contention that the six month requirement is a condition precedent that a vessel owner must plead and prove, without which an admiralty court lacks subject matter jurisdiction.").

Accordingly, the Court will construe the motion by NCBA as a Rule 12(b)(1) motion and consider the materials submitted by both parties in support of their memorandum even though those materials are not referred to in the complaint.

## B. As to Timeliness

As noted, the Limitation Act requires that the owner of a vessel bring a limitation action "within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C.A. § 30511 (West); <u>see also</u> Fed. R. Civ. P. Supp. R. F(1).

Neither the Limitation Act, nor Supplemental Rule F, define the requirements for "written notice." However, the Second Circuit has described the standard for determining whether written notice is sufficient as "broad and flexible" and has counseled courts to consider the "whole tenor" of relevant documents. <u>See</u> <u>Doxsee Sea Clam Co. v. Brown</u>, 13 F.3d 550, 554 (2d Cir. 1994) ("However, this Court has not required exacting specificity in a notice of claim to a vessel owner. Rather, we have employed a broad and flexible standard of review-reading letters of notice in their entirety and considering their 'whole tenor' — when determining if sufficient notice was given.").

The Second Circuit has stated that "[n]otice will be sufficient if it informs the vessel owner of an actual or potential claim, . . . which may exceed the value of the vessel[.]" <u>Doxsee</u>, 13 F.3d at 554 (citing <u>In re Spearin, Preston & Burrows, Inc. ("Lavinia D.")</u>, 190 F.2d 684, 686 (2d Cir. 1951)). Further, the notice by a plaintiff to the vessel owner need not make explicit that its potential claim against the owner exceeds the value of the boat; rather, it need only be "reasonably possible" to infer from the notice that the total amount of the claims will exceed the value of the ship. <u>Complaint of Morania Barge No. 190, Inc.</u>, 690 F.2d 32, 34 (2d Cir. 1982) ("Indeed, even when doubt exists as to the total amount of the claims or as to whether they will

exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain[.]") (citing In re Allen N. Spooner & Sons, Inc., 253 F.2d 584, 586–7 (2d Cir. 1958)); see also In re Eckstein Marine Serv., LLC, No. CIV.A. H-10-0156, 2010 WL 3303640, at *3 (S.D. Tex. Aug. 19, 2010) ("[W]ritten notice of a claim sufficient to begin the six-month period must reveal a 'reasonable possibility' that the claim made is one subject to limitation.") (citing Billiot v. Dolphin Servs., Inc., 225 F.3d 515 (5th Cir. 2000)).

For example, in Doxsee Sea Clam Co. v. Brown, 13 F.3d 550, 551 (2d Cir. 1994), a plaintiff was injured aboard a boat owned by the defendant. On May 29, 1991, the plaintiff's attorney wrote a letter to the defendant's claim adjuster stating that he had been retained to represent the plaintiff in a claim against the defendant. Id. at 552. The letter also stated that "[the defendant] should be paying [the plaintiff's] medical and hospital expenses, as well as maintenance for the time when [the plaintiff] was not hospitalized," and listed the hospital bills that were in his file, which were more than $110,000. Id. Subsequently, on June 18, 1992, the plaintiff commenced a personal injury action in state court. Id. On November 17, 1992, the defendant commenced a limitation of liability proceeding. Id. The plaintiff filed an answer in the limitation action asserting as an affirmative defense that the limitation action was time-barred. Id. at 553.

The district court in Doxsee denied the defendant's motion to strike the plaintiff's affirmative defense and dismissed the limitation action as time-barred. The Second Circuit affirmed, finding that the May 29, 1991 letter gave the defendant sufficient notice of the plaintiff's claim because it "specifically referred to [the attorney] having been 'retained' to represent [the plaintiff] against [the defendant] and the 'Re:' line of the letter was styled in the

manner of an actual, present controversy: 'Christian Brown v. Doxsee Sea Clam Company.'" <u>Id.</u>
at 554.  The court further found that "the itemization of medical bills in excess of $110,000
clearly was sufficient to inform [the defendant] of the reasonable possibility that a substantial
damages claim for personal injury in excess of $350,000 would be brought by [the plaintiff]."
<u>Id.</u>

By contrast, in <u>Complaint of Morania Barge No. 190</u>, Inc., 690 F.2d 32, 33 (2d Cir.
1982), the plaintiff brought suit in state court against the defendant, which owned a barge that
allegedly delivered the wrong oil to the plaintiff, causing the plaintiff and its customers damages.
In the complaint and the ensuing four and half years of litigation in state court, the plaintiff
repeatedly represented that its damages claims totaled less than the value of the defendant's boat.
<u>Id.</u> at 33.  On the eve of trial, the plaintiff sought to amend its complaint to increase its damages
claim to an amount that exceeded the value of the defendant's boat.  <u>Id.</u>  Subsequently, the
defendant commenced a petition for the limitation of liability pursuant to the Liability Act in
federal court.  <u>Id.</u>  The district court dismissed the defendant's petition for limitation of liability
as untimely.  <u>Id.</u>

The Second Circuit in <u>Morania Barge</u> reversed.  The court reasoned:

> [The defendant] was not obligated to institute a limitation of liability proceeding
> within six months after [the plaintiff] first gave notice of its claims since the
> notice made clear that [the plaintiff's] total damages would be substantially less
> than the value of the vessel and its freight (the limitation fund) and there were no
> claims by anyone other than [the plaintiff].

<u>Id.</u> at 34-35.  Moreover, the court concluded that the defendant was entitled to rely on the "sworn
representations" by the plaintiffs throughout the case that its damages did not exceed the value of
the boat.  <u>Id.</u> at 35.  Based on these representations, the court concluded that the defendant was
not required to initiate a limitation of liability proceeding under the Limitation Act until the

plaintiff filed an amended complaint increasing the amount of its purported damages.  Id.  As the

defendant had initiated the limitation action within six months of the amended complaint, the

Second Circuit found the action was timely.  Id.

Here, on August 6, 2014, NCBA filed a complaint asserting that the Bridge suffered

$850,000 in damages as a result of the alleged negligent actions of Henry Marine, Sterling, and

Olsen.  Henry Marine contends that it became aware that NCBA's damage claims exceeded

$530,000, the purported value of the Dorothy J, only after it was served with the complaint in the

Damages Action.  (Henry Marine Opp'n Mem. of Law at 14.)  As Henry Marine commenced the

instant limitation of liability proceeding on November 20, 2014, which is less than six months

after Henry Marine was served in the Damages Action, Henry Marine asserts that this action is

not time-barred.  (Id.; Compl. at ¶ 10.)

On the other hand, in its memorandum, NCBA asserts that Henry Marine received

written notice that its claim exceeded $530,000 prior to August 6, 2014, and thus, it claims that

this action is time-barred.  (NCBA's Mem. of Law at 4–5.)  Specifically, it relies on a July 18,

2013 email from LaRocca, a NCBA maintenance supervisor, to Julian, President and CEO of

Henry Marine, in which LaRocca wrote:

> I have been directed at this time to contact your firm in regards to the incident of
> the tug Dorothy J, and our North/West fender wring.  We are enquiring as to how
> you would like to proceed with repairs.  Please contact us on whether you would
> like to have your own company do the repair work, or have us do the repairs and
> bill your insurance.

(Hopkins Decl., Ex. A.)

LaRocca is not an attorney.  His email does not demand payment, nor does it suggest that

the parties have a disagreement with regard to payment that could give rise to a claim.  Cf.

Doxsee, 13 F.3d at 554 ("Matthews' letter made specific reference to 'a claim against' Doxsee

by Brown. It specifically referred to Matthews having been 'retained' to represent Brown against Doxsee and the 'Re:' line of the letter was styled in the manner of an actual, present controversy: 'Christian Brown v. Doxsee Sea Clam Company.'").   Therefore, the Court finds that the July 18, 2013 email, by itself, did not provide Henry Marine with sufficient written notice of NCBA's potential damages claim.  See, e.g., Complaint of Okeanos Ocean Research Found., Inc., 704 F. Supp. 412, 417 (S.D.N.Y. 1989) (finding that a letter was insufficient notice where it failed to "blame Okeanos for the injuries or make it clear that claimant intends to seek damages from Okeanos"); Rodriguez Morira v. Lemay, 659 F. Supp. 89, 91 (S.D. Fla. 1987) (finding that a letter was insufficient notice because "[i]t d[id] not inform the Lemays of [the] [p]laintiff's demand of a right or supposed right, blame them for any damage or loss, or call upon them for something due [the] [p]laintiff. The fact that the Lemays may have known of [the] [p]laintiff's demand is irrelevant; the document must inform them of this fact").

NCBA also relies on a March 18, 2014 letter from Mercante, the counsel for Henry Marine, to Kopilow, counsel for NCBA.  (Hopkins Decl., Ex. B.)  In that letter, Mercante indicates that Henry Marine was aware that NCBA was "considering pursuing a claim against it for repairs to the Atlantic Beach Bridge" based on "conversations" with Kopilow.  (Id. at 1.) However, Mercante does not explain what Kopilow said to him during those conversations. There is nothing in the letter which suggests that Henry Marine had reason to believe that NCBA was going to pursue a damages claim against it that exceeded the value of the Dorothy J.

For example, had Kopilow responded to Mercante's March 18, 2014 letter by disputing Mercante's claim that Henry Marine was not at fault for the accident and suggesting that the cost of repairing the bridge was substantial, then Henry Marine could arguably have been put on notice that NCBA's damage claim exceeded the value of Dorothy J.  Cf. Doxsee, 13 F.3d at 554

("Moreover, the itemization of medical bills in excess of $110,000 clearly was sufficient to inform Doxsee of the reasonable possibility that a substantial damages claim for personal injury in excess of $350,000 would be brought by Brown.").

However, Kopilow did not respond to Mercante's March 18, 2014 letter. Thus, the only written notice that Henry Marine appeared to receive from NCBA was a vague July 18, 2013 email that does not reference any claim against Henry Marine, let alone what it cost to repair the Bridge. This, together with a vague reference to "conversations" regarding a potential claim, is simply not enough to trigger the six-month statute of limitations. See Complaint of Okeanos Ocean Research Found., Inc., 704 F. Supp. 412, 417 (S.D.N.Y. 1989) ("[T]he letter in the instant action lacks the substance that would make it a notice of claim within the meaning of section 185.").

In reply, NCBA, relying in Doxsee, states that if Henry Marine was not clear as to the extent of NCBA's claim, "the burden was on Henry Marine to inquire of the Authority regarding this issue." (NCBA Reply Mem. of Law at 4–5.) The Court finds NCBA's argument to be problematic for a number of reasons.

First, as discussed earlier, in Doxsee, the plaintiff's attorney sent the vessel owner a letter that specifically threatened it with litigation and provided an "itemization of medical bills in excess of $110,000," the value of the board. The Second Circuit found this itemization of medical to be "clearly . . . sufficient to inform [the owner] of the reasonable possibility that a substantial damages claim for personal injury in excess of $350,000 would be brought by [the plaintiff]." Id. at 554. The court noted in *dicta*, "[e]ven if we were to conclude that the letter was ambiguous as to the amount that would be sought by [the plaintiff], the burden to seek clarification falls upon [the owner]." Id. at 555.

By contrast, here, neither the July 18, 2013 email, nor the March 18, 2014 letter, indicated the extent of the damages NCBA incurred as a result of the December 9, 2012 incident. Under these circumstances, it would be unreasonable to place the burden of Henry Marine to infer that NCBA might bring a damages claim that exceeded the value of the Dorothy J, as NCBA contends.  See Complaint of Okeanos Ocean Research Found., Inc., 704 F. Supp. at 417 ("A vessel owner is not required to infer that someone may bring a claim; a claimant must make his intentions clear in order to trigger the six month statute of limitations. Moreover, a rule requiring a claimant to state his intention clearly in order to start the running of the statutory time limit will deter claimants from sending a vague letter in the hope that the vessel owner will fail to file a timely petition."); see also Rodriguez Morira v. Lemay, 659 F. Supp. at 91 ("[The letter] does not inform the Lemays of [the] [p]laintiff's demand of a right or supposed right, blame them for any damage or loss, or call upon them for something due [the] [p]laintiff.  The fact that the Lemays may have known of [the] [p]laintiff's demand is irrelevant; the document must inform them of this fact.").

Second, in support of its opposition to NCBA's motion, Henry Marine submits a December 20, 2012 report by Merryrose and Co., Inc. ("Merryrose"), a surveyor retained by Henry Marine and its insurance company to evaluate the damages caused to the Bridge as a result of the December 9, 2012 incident. (Henry Marine, Ex. B.)   In the report, Merryrose "estimate[d] the cost of repairs at about $325,000 to $375,000."  (Henry Marine, Ex. B.)   In addition, Henry Marine attaches a January 25, 2013 report by Boswell Underwater Engineering ("Boswell"), a firm allegedly hired by NCBA to conduct a survey of the damage to the Bridge. (Henry Marine, Ex. D.)  In the report, Boswell predicted that the "overall cost of repairs" to the bridge would be $120,000.  (Henry Marine, Ex. D.)

NCBA does not offer any evidence disputing these estimates, nor provide any reason why it was not reasonable for Henry Marine to rely on them. As both of these surveys indicated that the cost of repairs to the Bridge was substantially less than $530,000, the Court finds Henry Marine had no reason to believe that NCBA would assert a claim against it that would exceed the value of the Dorothy J. See Complaint of Morania Barge No. 190, Inc., 690 F.2d at 34 ("The period would then begin to run only upon its appearing that there is a reasonable possibility that the claims would exceed the value of the ship. To hold otherwise would be to obligate a shipowner to go to the expense of posting security and taking the other steps necessary to commence a limitation proceeding when the claimant's specific representations demonstrate that such a proceeding will be wholly unnecessary.").

Based on the foregoing, the Court does not find that Henry Marine had sufficient written notice that NCBA would seek damages in excess of the value of the Dorothy J prior to August 6, 2014, when it was served with the Damages Action complaint. As Henry Marine commenced this Limitation Action within six months of that date, the Court finds this action to be timely and denies NCBA's motion to dismiss on that basis.

## C. As to the Potential Conflict With the "Saving to Suitors" Clause

The convergence of the Damages Action, the Henry Marine Limitation Action, and the Sterling Limitation Action forces the Court to "confront a recurring and inherent conflict in admiralty law: the apparently exclusive jurisdiction vested in admiralty courts by the Limitation of Liability Act versus the presumption in favor of jury trials and common law remedies embodied in the 'saving to suitors' clause of 28 U.S.C. § 1333[.]" Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 754 (2d Cir. 1988).

As noted, the Limitation Act was designed "'to encourage the development of American merchant shipping'" by limiting a ship owner's liability to the value of his or her vessel and the pending freight.  Id. (quoting Lake Tankers Corp. v. Henn, 354 U.S. 147, 150, 77 S.Ct. 1269, 1271, 1 L.Ed.2d 1246 (1957)).  Once a limitation proceeding has been filed, the district court "secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims."  N. E. Marine, Inc. v. Boody, No. 09-CV-5600 CBA, 2012 WL 4482794, at *5 (E.D.N.Y. July 5, 2012) report and recommendation adopted, No. 09-CV-5600 CBA RLM, 2012 WL 4482772 (E.D.N.Y. Sept. 27, 2012) (quoting Lewis, 531 U.S. at 448).  Thereafter, "in a proceeding known as a *concursus*, the district court, sitting in admiralty without a jury, determines 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed.'"  Dammers, 836 F.2d at 755 (quoting Universal Towing Co. v. Barrale, 595 F.2d 414, 417 (8th Cir. 1979)).

On the other hand, 28 U.S.C. § 1333 provides ,"[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (emphasis added).  This latter clause is referred to as the "saving to suitors" clause, and, as the Court discussed in detail in its September 19, 2015 decision in the Damages Action, the Supreme Court has interpreted it to preserve a plaintiff's ability to pursue its common law admiralty claims in state court where, unlike in federal courts, it may avail itself of common law remedies, such as a jury trial.  (See September 19, 2015 Order, Dkt. No. 14-cv-5197, at 15–16); see also Dammers, 836 F.2d at 754 n. 4 ("'The savings clause has long been recognized as meaning that in cases of concurrent jurisdiction in admiralty and common law, the jurisdiction in

the latter is not taken away. The saving is for the benefit of suitors, plaintiff and defendant, when the plaintiff in a case of concurrent jurisdiction chooses to sue in the common law courts, so giving to himself and the defendant all the advantages which such tribunals can give to suitors in them."') (quoting Waring v. Clarke, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847)).

Thus, the "saving to suitors" clause and the Limitation Act present a conflict in cases such as this because "[o]ne statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." Lewis, 531 U.S. at 448; see also Dammers, 836 F.2d at 755 ("In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury . . . . Such a result is in direct conflict with the promise of 28 U.S.C. § 1333 that the exercise of admiralty jurisdiction will not deny suitors their right to common law remedies.").

To reconcile this conflict, the Supreme Court in Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 450, 121 S. Ct. 993, 1002, 148 L. Ed. 2d 931 (2001) stated that district courts have "discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court" where the district court "satisfies itself that a vessel owner's right to seek limitation will be protected[.]"

The Court in Lewis identified two situations where a court properly exercises its discretion in staying a limitation proceeding in federal court to allow a claimant to pursue its claim in state court.

First, "when a lone claimant brings an action seeking an amount in excess of the limitation fund, the district court must lift the stay against other proceedings if that claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability." Dammers, 836 F.2d at 755; see also Lewis, 531 U.S. at 448–49 ("We

decided that the District Court should have dissolved the injunction and allowed the employee to proceed with his claim in state court, and retained jurisdiction over the petition for limitation of liability in the event that the state proceedings necessitated further proceedings in federal court.").

Second, "if the limitation fund, which represents the value of the vessel and its cargo, exceeds the aggregate of the claims to be made against it, a *concursus* is unnecessary and the district court must allow claimants to proceed in other forums." Dammers, 836 F.2d at 755; see also Lewis, 531 U.S. at 450 ("Where the value of the vessel and the pending freight exceed the claims, however, there is no necessity for the maintenance of the action in federal court.").

Here, as noted, in the Damages Action, the Court issued a decision remanding the case to state court so that NCBA could vindicate its right under the "saving to suitors" clause to pursue its common law negligence claims against Henry Marine, Olsen, and Sterling. (See September 19, 2015 Order, Dkt. No. 14-cv-5197, at 18.)

On the other hand, in the instant Limitation Action, Henry Marine seeks to vindicate its federal right under the Limitation Act to limit its liability arising from the December 9, 2012 accident to the value of the Dorothy J. Similarly, in the Sterling Limitation Action, Sterling has also sought to vindicate its federal right to limit its liability to the value of the Kelly. In both of these actions, the Court has issued orders enjoining the prosecution of any related actions, including the Damages Action, pending the outcome of these limitation proceedings.

These injunctions, which prevent NCBA from proceeding in state court, clearly impinge upon NCBA's right under the "saving to suitors" clause to pursue its common law negligence claims in Nassau County Supreme Court.

To deal with this potential conflict, in its reply memorandum, NCBA "represents that it will discontinue its claim against Sterling Equipment, Inc."  (NCBA Reply Mem. of Law at 6–7.)  According to NCBA, "[t]he dismissal of the claim against Sterling would allow this court to deny limitation . . . and, therefore, subject to the single claim exception to a limitation action."  (Id. at 6.)  There are a number of problems with NCBA's proposal.

First, there is no stipulation before the Court signed by NCBA and Sterling, and therefore, the Court, particularly without hearing from Sterling, is reluctant to assume, that Sterling is "dismissed from the case."

Second, and perhaps more importantly, even if NCBA dismisses its claim against Sterling, that does not leave only a "single claimant" in this action.  Instead, it leaves two claimants in the limited fund in this action.  One is NCBA, which has asserted a negligence counterclaim against Henry Marine for its role in the December 9, 2012 accident.  (NCBA Answer at ¶ 54.)  The other is Sterling, which has asserted two counterclaims against Henry Marine for indemnity and a breach of the implied warranty of workmanlike performance.  (Sterling Answer at ¶ 24, 25.)  Thus, dismissal of NCBA's claim against Sterling will still leave multiple claimants in this action and require a Court to determine liability and distribute the limited fund provided for by the Dorothy J.  Thus, a *concursus* is necessary, and the single claimant exception would not be applicable.

In its reply memorandum, NCBA contends, without citing to any legal authority, that Sterling's claim "is solely for indemnification from Henry Marine," and thus this claim does not count for purposes of determining whether the "single claimant" exception applies.  The Court disagrees.

The Second Circuit in Dammers & Vanderheide & Scheepvaart Maats Christina B.V., *supra*, explicitly held that "claims for indemnification" constitute separate claims against ship owners, and thus do not invoke the single claimant exception. 836 F.2d 750, 757 ("As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a concursus."); see also  N. E. Marine, Inc. v. Boody, No. 09-CV-5600 CBA, 2012 WL 4482794, at *10 (E.D.N.Y. July 5, 2012) report and recommendation adopted, No. 09-CV-5600 CBA RLM, 2012 WL 4482772 (E.D.N.Y. Sept. 27, 2012) ("In this Circuit, which follows the majority view, third-party claims for contribution, indemnification, and attorneys' fees all constitute separate claims sufficient to create a multiple-claimant situation requiring a *concursus*.") (citing Dammers, 836 F.2d at 757).

Thus, the dismissal of NCBA's claim against Sterling would not eliminate the need for a limitation proceeding because Henry Marine is still subject to a claim for indemnification by Sterling and a claim for negligence by NCBA which might exceed the value of the Dorothy J.

However, the Second Circuit in Dammers did highlight a number of specific terms that claimants could stipulate to in limitation proceedings which would sufficiently protect a ship owner's rights, and thus, permit a district court to stay limitation proceedings.  In particular, the court found the following terms of a stipulation sufficient to protect a ship owner's rights in a limitation proceeding:

> (1) "consent to waive any claim of *res judicata* relevant to the issue of limited liability based on any judgment obtained in the state court";
> (2) "concede [the] shipowner's right to litigate all issues relating to limitation in the limitation proceeding";
> (3) "in the event there is a judgment or recovery in any State Court actions in excess of [the limitation fund,] whether against the [petitioners], or any other liable parties who may cross-claim or claim over against the [petitioners], in no event will claimant[s] . . . seek to enforce said excess judgment or recovery

insofar as same may expose [petitioners] to liability in excess of [the limitation fund,] pending the adjudication of Limitation of Liability in the District Court"; and

(4) "if the [petitioners] are held to be responsible for attorneys['] fees and costs which may be assessed against them by a co-liable defendant or party seeking indemnification ... for attorney fees and costs then such claims shall have priority over the claim for [claimants]."

N. E. Marine, Inc. v. Boody, 2012 WL 4482794 at *11 (quoting Dammers, 836 F.2d at 757–59).

However, NCBA has not submitted a stipulation, let alone one with these terms.

Therefore, although the Court is aware of NCBA's rights under the "saving to suitors" clause, it is, in its discretion, unwilling to stay the Henry Marine Limitation Action until the claimants have provided the Court with a stipulation that would satisfy it that Henry Marine's federal right to a limitation proceeding in this Court would not be prejudiced by permitting NCBA and Sterling to proceed with their claims against Henry Marine in Nassau County Supreme Court. Thus, the Court denies NCBA's motion to dismiss this proceeding, without prejudice, and with leave to renew as a motion to stay the limitation proceeding provided that the parties reach an appropriate stipulation containing terms similar to those outlined in Dammers.

### III. CONCLUSION

For the foregoing reasons, the motion by NCBA to dismiss this action is denied without prejudice and with leave to renew as a motion to stay the Henry Marine Limitation Action provided that the claimants agree to a stipulation which protects Henry Marine's right to seek limitation of liability to the value of the Dorothy J.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2015

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge